IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ronald D. Leonard,                    :

            Plaintiff,       :   Case No. 2:09-cv-950

    v.                        :   JUDGE ALGENON L. MARBLEY
                                  Magistrate Judge Kemp
State of Ohio, et al.,        :

            Defendants.       :

REPORT AND RECOMMENDATION AND ORDER

    Plaintiff, Ronald D. Leonard, a state prisoner currently
confined at the Lebanon Correctional Institution, filed this
action under 42 U.S.C. §1983 against the State of Ohio, the Ohio
Department of Rehabilitation and Correction - Department of
Medical Services, and three individual defendants arising out of
alleged deliberate indifference to his serious medical needs
while he was an inmate at the Chillicothe Correctional
Institution.  The claims against all defendants but Dr. Obregon
were dismissed by order dated September 21, 2011.  Dr. Obregon
has moved for summary judgment and the motion has been fully
briefed.  For the following reasons, it will be recommended that
the motion for summary judgment be granted.  Further, all of Mr.
Leonard's pending motions (#43, #46, and #52) will be denied, as
will Dr. Obregon's motion to strike (#57).

I.  Background

    In order to provide context for the current summary judgment
motion, some discussion of the Court's previous decision adopting
a Report and Recommendation issued August 23, 2011, and
dismissing all claims except the claim against Dr. Obregon, is in
order.  The Court's previous order addressed a motion for
judgment on the pleadings, a motion that is reviewed under the

same standard as a motion to dismiss.  In that motion, the
defendants argued that the complaint failed to meet the pleading
standard established in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S.
554 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  That is,
they contended that the complaint failed to set forth enough
facts - as opposed to conclusory statements of legal matters - to
state a claim under §1983.  With respect to defendants' argument
as it related to Dr. Obregon, the Report and Recommendation
stated as follows:

> ...the facts which Mr. Leonard has alleged are
> these. ... he saw Dr. Obgregon on August 3, 2009, for
> treatment of his back.  He alleges that Dr. Obregon
> failed "to acknowledge [his] pathology," which he
> described as an injury to the lumbar spine, and failed
> to refer Mr. Leonard to a qualified medical
> practitioner, such as a board-certified orthopedic
> specialist.  Although not in the complaint, Mr. Leonard
> claims, in his memorandum opposing the motion for
> judgment on the pleadings (to which he swore under
> penalty of perjury) that he was suffering from severe
> and excruciating pain on that date due to a prior
> condition, spinal stenosis, and that Dr. Obregon, after
> only a brief examination, speculated that the pain
> could be of psychological origin, and refused to
> prescribe any treatment at all, including giving Mr.
> Leonard a cane to walk back to his dormitory.  When Mr.
> Leonard insisted on more treatment, Dr. Obregon
> threatened him with disciplinary action.
>
> These facts, if true, state a claim for deliberate
> indifference to a serious medical need under the
> prevailing Eighth Amendment standard. ...
>
> There is no dispute that back conditions which
> cause severe pain can qualify as "serious medical
> needs" which fall within the scope of the Eighth
> Amendment.  ...  Although Mr. Leonard may have been
> somewhat inconsistent in the precise description he has
> given for his condition(either a herniated disc or
> spinal stenosis), he has alleged that it was diagnosed
> by proper techniques and that he was in severe pain
> when he saw Dr. Obregon.  He also alleges he told Dr.
> Obregon about his conditions but that rather than

getting either a suitable examination or any treatment,
he was threatened with discipline if he did not leave.
These are factual allegations which, if true (and the
Court must accept them at this stage in the case),
satisfy the plausibility standard set forth in Iqbal
and Twombly.  Therefore, Dr. Obregon is not entitled to
judgment on the pleadings on this claim, and its
ultimate disposition must await further factual
development.

Report and Recommendation, Doc. #28, pp. 6-8.

The defendants filed a partial objection asserting that it
was error that the Report and Recommendation looked not only to
the complaint to determine whether Mr. Leonard had stated a
viable claim under the Eighth Amendment, but also took his
opposing memorandum and sworn declaration into account.  In
adopting the Report and Recommendation, the Court held that,
because the defendants had not objected to the material outside
the pleadings, had not asked the Court to disregard it, and had
themselves responded to the information on its merits, no error
had occurred.  The Court also confirmed that back conditions can
qualify as serious medical needs under Eighth Amendment
jurisprudence.  Finally, the Court noted that "[p]laintiff's
claim that 'he told Dr. Obregon about his conditions but that
rather than getting either a suitable examination or any
treatment, he was threatened with discipline if he did not leave'
is enough to state a plausible claim for deliberate indifference,
and not simply a difference of opinion about what treatment was
appropriate." See Opinion and Order, Doc. #34, p. 4.

In short, in ruling on the motion for judgment on the
pleadings, the Court held only that Mr. Leonard's allegation of a
serious back condition which Dr. Obregon not only failed to treat
but threatened Mr. Leonard about, was sufficient to state a claim
to avoid dismissal at the pleading stage.  As the Court
explained, the allegations of the complaint would need further

factual development before a disposition could be reached.  This
factual development, of course, would need to be addressed to the
elements of Mr. Leonard's §1983 claim - that his back condition
qualified as a serious medical need and that Dr. Obregon both
knew of the seriousness of this back condition and refused to
treat it even to the point of threatening Mr. Leonard with
disciplinary action if Mr. Leonard did not leave the clinic.  Dr.
Obregon has now moved for summary judgment arguing that Mr.
Leonard has failed to come forward with any factual development
of his claim.

II.  The Motion for Summary Judgment

A.  Legal Standard

Summary judgment is not a substitute for a trial when
facts material to the Court's ultimate resolution of the case
are in dispute.  It may be rendered only when appropriate
evidentiary materials, as described in Fed. R. Civ. P. 56(c),
demonstrate the absence of a material factual dispute and the
moving party is entitled to judgment as a matter of law.
Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464
(1962).  The moving party bears the burden of demonstrating
that no material facts are in dispute, and the evidence
submitted must be viewed in the light most favorable to the
nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144
(1970).  Additionally, the Court must draw all reasonable
inferences from that evidence in favor of the nonmoving
party.  United States v. Diebold, Inc., 369 U.S. 654 (1962).
The nonmoving party does have the burden, however, after
completion of sufficient discovery, to submit evidence in
support of any material element of a claim or defense on
which that party would bear the burden of proof at trial,
even if the moving party has not submitted evidence to negate

-4-

the existence of that material fact.  See Celotex Corp. v.
Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking
summary judgment ... bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of [the record] which it believes
demonstrate the absence of a genuine issue of material fact,"
Celotex, 477 U.S. at 323, the responding party is only required
to respond to those issues clearly identified by the moving party
as being subject to the motion.  It is with these standards in
mind that the instant motion must be decided.

B.  <u>Dr. Obregon's Motion</u>

As noted above, the focus of Dr. Obregon's motion for
summary judgment is that Mr. Leonard has failed to provide
factual evidence to substantiate his deliberate indifference
claim.  Specifically, Dr. Obregon argues that Mr. Leonard's
medical records do not support his allegation of a serious back
injury.  As characterized by Dr. Obregon, the medical records
"reference periodic complaints ... regarding a purported ...
back injury he claims he sustained in 2003."  See Motion for
Summary Judgment, Doc. #41, p.2.  Further, Dr. Obregon asserts
that Mr. Leonard's medical records indicate that his complaints
of back pain are simply an excuse to acquire prescription
narcotics for pain.

With respect to the evaluation of Mr. Leonard on August 3,
2009, Dr. Obregon contends that he reviewed OSU Medical Center
records and found "'neurology within normal limits at OSU in
March of 2009'" and referred Mr. Leonard for neurology
recommendations.  As Dr. Obregon explains, based on this
referral, Mr. Leonard was evaluated on August 17, 2009, at which
time he requested and was prescribed a cane, was evaluated and
diagnosed with lumbar strain, prescribed ibuprofen and instructed

-5-

on exercises.  According to Dr. Obregon, Mr. Leonard was not seen again in the clinic until February 26, 2010.

In addition to arguing that Mr. Leonard cannot document a serious health condition, Dr. Obregon contends that Mr. Leonard has not met his burden of establishing that Dr. Obregon knew of and disregarded any health risk.  Further, Dr. Obregon contends that, even assuming the presence of a serious medical condition, Mr. Leonard has failed to demonstrate any injury he suffered as a result of any alleged deliberate indifference.  Finally, Dr. Obregon asserts that he is entitled to qualified immunity.

C.  <u>Dr. Obregon's Exhibits</u>

Dr. Obregon has attached to his motion a number of medical records from Mr. Leonard's institutional medical file including records from OSU Medical Center and Grant Hospital.  These records date from approximately May, 2005 through May, 2010. This evidence can be summarized as follows.  On May 11, 2005, Mr. Leonard was seen in the Emergency Department at OSU Medical Center and was diagnosed with sciatica based on his complaints of back pain.  He was prescribed percocet and prednisone.  <u>See</u> Defendant's Exhibit A.  On August 27, 2008, Mr. Leonard had an Axial CT image which revealed no evidence of thoracic or lumbar spine fracture or dislocation.  This CT scan was performed at Grant Medical Center.  <u>See</u> Defendant's Exhibit B.

Defendant's Exhibit C is an 11-page report from OSU Medical Center containing Clinic Notes from four separate visits - November 21, 2008, January 5, 2009, February 13, 2009, and March 27, 2009.  These notes all appear to relate to Mr. Leonard's symptoms following an automobile accident in August, 2008, including post-concussive syndrome, chronic headaches, and reflux disease.  In the notes from March and February there is some reference to a history of back pain although it appears to be only as reported by Mr. Leonard.

-6-

Defendant's Exhibit D is a Grant Medical Center report dated May 25, 2005. This report indicates that Mr. Leonard went to the emergency department after having left an emergency room in Lancaster presumably because he was unhappy with the manner in which his complaints of neck and back pain were addressed. The report states that Mr. Leonard was out of Lortab but does not indicate that Lortab was prescribed for him at this visit. Rather, it appears that Mr. Leonard was recommended for follow-up treatment with the Grant clinic regarding future treatment of his chronic pain syndrome.

Defendant's Exhibit E, Dr. Obregon's notes from August 3, 2009, states that Mr. Leonard "claims he has herniated disc will request records from Riverside, neuro work up at OSU in March 2009 - post traumatic brain syndrome P request record from Riverside, MH referral recommended by Neurology dept."

Defendant's Exhibit F is the notes of Mr. Leonard's August 17, 2009 follow-up appointment at CCI which indicate he was prescribed ibuprofen for a lumbar sprain and given a cane. According to these notes, Mr. Leonard was not seen again until February 26, 2010.

Defendant's Exhibit G is a decision of the Chief Inspector of CCI dated October 15, 2009, following Mr. Leonard's appeal of a grievance. This document states that the Chief Inspector reviewed Mr. Leonard's medical records, and that, among other things, these records indicated that his admission lab of April 9, 2009, was normal.

Dr. Obregon also has submitted a declaration from Diann Lento, the Acting Health Care Administrator at the Toledo Correctional Institution, where Mr. Leonard was incarcerated prior to his transfer to Lebanon. See Defendant's Exhibit H; see also Notice of Change of Address, Doc. #38. According to Ms. Lento's declaration, she has reviewed and provided accurate

copies of the information in Mr. Leonard's medical file and Mr. Leonard has not provided the identity of a medical provider who has diagnosed him with an injury to his lumbar or sacral spine.

Initially, in response to the motion for summary judgment, Mr. Leonard filed a motion to strike Ms. Lento's declaration followed shortly by a motion to expedite the decision on the motion to strike. The focus of Mr. Leonard's motion to strike is his belief that Ms. Lento falsely stated that there was no record of a medical provider having diagnosed an injury to his lumbar or sacral spine. The basis for Mr. Leonard's belief is an MRI result from Riverside Methodist Hospital dated February 10, 2006, for which he signed a release on June 4, 2009, while incarcerated at Chillicothe. According to Mr. Leonard, a letter he received from Ms. Lento in April, 2012, indicates that the MRI result was in his file. In his motion to expedite, Mr. Leonard requests that the Court compel the production of this 2006 MRI report which, from his perspective is "vital" to support his claim against Dr. Obregon.

In response to the motion to strike, Dr. Obregon submitted a copy of the 2006 MRI along with an additional declaration from Ms. Lento. According to this declaration, the MRI result demonstrates at best that "there was moderate to mild stenosis on the left side of the L4-5 vertebrae which may cause some irritation to the L4 nerve root." See Defendant's Memorandum in Opposition, Doc. 45, Exhibit A, ¶6. Further, the stenosis was so mild, it did not appear in the CT tests of the thoracic and lumbar spine conducted on August 27, 2008. Id. at ¶7. In light of the submission of the 2006 MRI into the record, the Court will deny the motions to strike.

D. <u>Mr. Leonard's Memorandum Contra</u>

As his memorandum contra the summary judgment motion, Mr. Leonard has submitted a declaration under penalty of perjury

-8-

captioned as "Fed.R.Civ.P. 56(f) Response in Opposition to Defendants Motion for Summary Judgment; and Plaintiff's Reply to Defendants Memorandum in Opposition (Doc. #53) to Plaintiff's Motion for Leave to Compel Discovery (Doc. #52)." According to Mr. Leonard's declaration, he has made several attempts to obtain three MRI results necessary for the Court to determine whether on August 3, 2009, Dr. Obregon at CCI refused treatment of his sufficiently serious medical condition. Mr. Leonard does not specify in his declaration the precise additional medical records he believes he needs to support his claim against Dr. Obregon. From reading his numerous motions for extension of time with attached exhibits, however, it appears that Mr. Leonard is seeking copies of records from O'Bleness Memorial Hospital in Athens, Ohio, and a 2007 MRI of his thoracic spine taken at Dynamic Imaging in Columbus, Ohio. Mr. Leonard does not indicate the time frame for the records from O'Bleness. See Doc. #42, He also mentions his need for the record of the 2006 MRI at Riverside Hospital although, as discussed above, the document is already part of the record in this case.

Mr. Leonard asserts that although he inadvertently stated that he has a herniated disc located at the L4-L5 and L5-S1 vertebrae levels of the lumbar and sacral spine, he actually has an anterior herniated disk existing at the T9-T10 levels of the thoracic spine. He contends that the MRI results he is seeking will confirm this. He argues, as he had previously, that, in her declaration in support of the motion for summary judgment, Ms. Lento failed to recognize the existence of the MRI report from Riverside Methodist Hospital in Columbus, Ohio dated February 10, 2006, indicating "foraminal stenosis most prominent on the left at L4-5. This may be a means of irritation in the left L4 nerve root."

Mr. Leonard has submitted a number of exhibits into the

record, although not in any particular order and not all in connection with his formal response to the summary judgment motion.  Further, some of the exhibits he has submitted are the same as exhibits submitted by Dr. Obregon and discussed above. In his response, Mr. Leonard relies on two reports which are marked as Plaintiff's Exhibits 5 and 6 and which he submitted in connection with his motion for extension of time filed July 2, 2012 (Doc. #48).  These are not exhibits submitted by Dr. Obregon.  Plaintiff's Exhibit 5 is a letter dated March 5, 2009, from Dr. Liu, a resident in the neurology department at OSU Medical Center which was reviewed and signed also by Dr. Lynn, a professor in the neurology department.  The examination results with respect to Mr. Leonard's motor system contained in the letter state as follows:  "Generally 5/5 except the left leg.  He is unable to participate in full strength tests secondary to muscle aching.... He has diminished Achilles tendon reflexes, mostly on the left side."  Mr. Leonard contends that this information is "consistent to a reasonable degree of medical certainty" with the finding of foraminal stenosis.

Plaintiff's Exhibit 6 is a letter dated January 12, 2009, and addressed to Dr. Jonas at OSU Internal Medicine, from a doctor at OSU Physical Medicine and Rehabilitation at Dodd Hall. The stated reason for the visit was "evaluation of a TBI in August 2008 with postconcussive syndromes."  Mr. Leonard does not explain in his response how this letter relates to his claim.

Mr. Leonard also has submitted a copy of his institutional complaint made following his appointment with Dr. Obregon on August 3, 2009.  The gist of this complaint appears to be Dr. Obregon's alleged belief that Mr. Leonard might be suffering from a psychological issue and Mr. Leonard's belief that Dr. Obregon lacked the expertise to diagnose his condition.  Absent from this document is any information relating to Mr. Leonard's contention

-10-

that Dr. Obregon threatened him with disciplinary action if he
did not leave the clinic.

### E.  Dr. Obregon's Reply

In reply, Dr. Obregon contends that, rather than come
forward with any evidence of a diagnosis to substantiate his
herniated disc allegation, Mr. Leonard continues to rely on the
2006 MRI that, at best, provides some evidence of a congenital
condition so mild that it neither required medical intervention
nor appeared on the CT scan taken in August, 2008.  Further, Dr.
Obregon asserts that Mr. Leonard has not come forward with any
evidence to support his allegation that Dr. Obregon was
deliberately indifferent to Mr. Leonard's medical needs.
Finally, Dr. Obregon argues that Mr. Leonard has not demonstrated
that Dr. Obregon is not entitled to qualified immunity.

### III.  Analysis

To establish an Eighth Amendment violation, a prisoner
must show that he or she has a serious medical condition and
that the defendants displayed a deliberate indifference to
his or her health.  Estelle v. Gamble, 429 U.S. 97 (1976);
Wilson v. Seiter, 501 U.S. 294 (1991).  This formulation has both
a subjective and an objective component.  Objectively, the
medical condition at issue must be "serious" as opposed to
"trivial," "minor," or "insubstantial."  Subjectively, the
defendants accused of violating the Eighth Amendment must have
acted with a state of mind that can be accurately described as
"deliberate indifference."  Each of these components requires
some elaboration.

It is not always easy to distinguish serious medical
conditions from those that are not sufficiently substantial to
implicate the Constitutional prohibition against cruel and
unusual punishment, and the facts concerning the seriousness of
an inmate's condition are frequently in dispute.  In evaluating

such claims, courts have given weight to a variety of factors, including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain.  See Chance v. Armstrong, 143 F.3d 688, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811 F.Supp. 1221 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment.  See Napier v. Madison Co., Ky., 238 F.3d 739 (6th Cir. 2201).  In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present.  Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective element, in Farmer v. Brennan, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." Id. at 837.  Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion.  Id.  Prison officials who know of a

-12-

substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

Turning first to the issue of whether Mr. Leonard has satisfied the objective component of an Eighth Amendment deliberate indifference claim, the Court cannot conclude that he has demonstrated the existence of a serious medical condition relating to his back.  There are essentially three pieces of evidence in the record directed specifically to the issue of Mr. Leonard's back.  The first piece of such evidence is Defendant's Exhibit A, an emergency record from OSU Medical Center dated May 11, 2005.  This report contains a diagnosis of sciatica which it describes as a "general term for low back pain."  The second piece of such evidence is the 2006 MRI which revealed mild stenosis.  The third piece of such evidence is the 2008 CT scan of Mr. Leonard's lumbar and thoracic spine taken at Grant Medical Center.  This scan showed no evidence of fracture or dislocation and no evidence of stenosis.

The additional medical evidence in the file is not addressed to either the treatment or diagnosis of any specific back condition suffered by Mr. Leonard.  For example, the medical

-13-

records from OSU Medical Center submitted by Mr. Leonard do not provide any significant discussion of a back injury.  Plaintiff's Exhibit 6 discusses an "[e]valuation of a TBI in August 2008 with postconcussive syndromes" following a motor vehicle accident in 2008.  Further, Plaintiff's Exhibit 5 relates to a neurological evaluation of Mr. Leonard as a result of the motor vehicle accident and traumatic brain injury.  Both of these documents make passing reference in the past medical history discussion of a herniated disc.  Plaintiff's Exhibit 5 also evaluates his motor systems as "[g]enerally 5/5 except the left leg."  Neither of these exhibits contain any recommendation relating to a herniated disc condition.  Plaintiff's Exhibit 5 does recommend, however, that Mr. Leonard undergo a "neuropsychiatric evaluation."

Additionally, the remaining medical reports submitted by Dr. Obregon do not address specifically the issue of Mr. Leonard's back.  As discussed above, the four sets of clinic notes from OSU Medical Center relate to Mr. Leonard's treatment and diagnoses of symptoms following a car accident in August, 2008.  To the extent that the issue of back pain is mentioned at all, it is set forth simply as reported medical history.

Moreover, Mr. Leonard's request for additional documents, including a report of unspecified date from O'Bleness Hospital in Athens and a report from Dynamic Imaging dated 2007, does nothing to raise a genuine issue of material fact regarding whether he was suffering from a serious back condition on August 3, 2009.  There is sufficient medical evidence in the record from dates later than 2007 which does not indicate the presence of a serious back condition.  Further, although Mr. Leonard does not indicate the precise dates of any treatment at O'Bleness Hospital, other reports in the record indicate that it would have occurred sometime between his automobile accident in August, 2008 and his visit to OSU Medical Center on January 12, 2009.  Plaintiff's

-14-

Exhibit 6 indicates that Mr. Leonard was seen at O'Bleness for a
work-up for syncopal episodes.  There is no information in any
medical report indicating that Mr. Leonard was seen at O'Bleness
for any issue relating to his back.  Consequently, to the extent
that Mr. Leonard seeks to compel these additional documents -
either through his summary judgment response or his various other
pending motions - this request will be denied.

Based on all of the above, and construing the evidence in
the light most favorable to Mr. Leonard, with respect to his back
condition, he has demonstrated nothing beyond a finding of mild
stenosis in 2006.  The remaining medical information relating to
his back, including the diagnosis of sciatica (which by
definition is a generic term for low back pain), appears to be
based on nothing more than medical history or symptoms presented
by Mr. Leonard to various physicians.  A finding of mild stenosis
in 2006 is insufficient to demonstrate the existence of a serious
back condition on August 3, 2009, especially in light of the
other evidence, or more accurately, the lack thereof, in the
record.

As noted, a CT scan taken in 2008 not only failed to
indicate a finding of stenosis, it found no fracture or
dislocation of Mr. Leonard's lumbar or sacral spine.  Further,
according to the decision of the chief inspector on appeal, Mr.
Leonard did not indicate any back problems during his admission
lab on April 9, 2009.  Also, in his institutional complaint filed
on August 3, 2009, Mr. Leonard does not express that he was in
severe pain as a result of a back condition, but only that his
request for a cane was denied.  Additionally, the
interdisciplinary notes indicate that Mr. Leonard did not seek
any medical attention for severe pain relating to his back
following the August 3, 2009, appointment with Dr. Obregon.
Rather, the next time Mr. Leonard was seen in the clinic was on

-15-

August 17, 2009, when he was prescribed a cane and ibuprofen. After that, he was not seen again until February 26, 2010.

Mr. Leonard's conclusory statement, made under the guise of a "declaration," that he suffered from a herniated disk condition is insufficient to raise a genuine issue of material fact on this issue. "'[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment.'" Rachells v. Cingular Wireless Employee Services, LLC, 2012 WL 3648835, *2 (N.D. Ohio 2012); see also Engle v. Meister, 495 F.Supp.2d 826, 835 (S.D. Ohio 2007). As Judge Rice explained in Engle, in discussing Rule 56 as in effect then:

> Rule 56(e) provides in pertinent part that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the Supreme Court noted that "[t]he object of this [part of Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." The Sixth Circuit has, therefore, repeatedly held that a conclusory statement in an affidavit or declaration cannot create a genuine issue of material fact. See e.g., Livingston Care Center v. U.S. Dept. of Health and Human Services, 388 F.3d 168, 171 (6th Cir. 2004); Bell v. Ohio State University, 351 F.3d 240, 253 (6th Cir.2003).

It is reasonable to conclude that if Mr. Leonard suffered from a herniated disk causing him severe pain, medical records would show some evidence of such a diagnosis. None of the records presented to the Court do so and, as discussed above, there is nothing to indicate that the additional records Mr. Leonard believes he needs would do so either. This is

-16-

particularly significant given that Mr. Leonard appears to be no stranger to the OSU Medical Center specifically and other medical facilities generally.  Further, if Mr. Leonard were experiencing severe pain from a herniated disk on August 3, 2009, and Dr. Obregon had in fact denied him treatment on that date, two things seem probable.  First, that specific fact would have formed the basis of his institutional complaint filed that same day as opposed to the more general allegations about a need for a cane and Dr. Obregon's lack of qualifications that complaint contained.  Second, Mr. Leonard would have sought further treatment prior to August 17, 2009.

Similarly, the evidence presented does not support Mr. Leonard's statement in his declaration, submitted in response to the motion for judgment on the pleadings, that Dr. Obregon refused to examine or treat him and instead threatened him with discipline if he did not leave.  While this statement was found by the Court to be sufficient to allow Mr. Leonard's claim to withstand the motion for judgment on the pleadings, Mr. Leonard has failed to develop any facts supporting this allegation.  As a result, with respect to this element of his claim, the record contains nothing beyond a conclusory assertion offered under the guise of a "declaration."  As discussed above, this cannot serve to defeat a properly supported summary judgment motion.

The institutional complaint Mr. Leonard filed following his appointment with Dr. Obregon makes no mention of such conduct by Dr. Obregon.  Rather, this complaint only notes Dr. Obregon's denial of his request for a cane and challenges Dr. Obregon's medical qualifications.  In light of this, even assuming Mr. Leonard had demonstrated the existence of a serious medical condition, he is unable to demonstrate Dr. Obregon's disregard of such a condition in violation of the Eighth Amendment.

Without any evidence to support this allegation, Mr. Leonard

-17-

has not demonstrated anything beyond his disagreement with Dr. Obregon's medical opinion.  This is insufficient to raise a genuine issue of material fact with respect to Mr. Leonard's claim of deliberate indifference to his serious medical needs.  See Estelle, 469 U.S. at 107.  Consequently, it will be recommended that the motion for summary judgment be granted.

Finally, the Court notes that, in his response, Mr. Leonard makes reference to threats of assault or death by the Aryan Brotherhood and claims of retaliation for filing grievances.  These issues do not relate in any way to Mr. Leonard's Eighth Amendment claim and the Court sees no reason to address these fairly unspecific allegations here.

### IV.  Conclusion

For the reasons set forth above, it is recommended that the motion for summary judgment (#41) be granted and that this case be dismissed.  The motions to strike (#43, #46, and #57)  are denied.  Further, the motion for an extension of time (#52) is denied.

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object

to the Report and Recommendation will result in a waiver of the
right to have the district judge review the Report and
Recommendation de novo, and also operates as a waiver of the
right to appeal the decision of the District Court adopting the
Report and Recommendation.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140
(1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).




                                   /s/ Terence P. Kemp
                                   United States Magistrate Judge